UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CRYSTAL SCISM, INDIVIDUALLY,
AND AS ADMINISTRATRIX OF
THE ESTATE OF JOSHUA SCISM,

|  |  |  |
|---|---|---|
|  | Plaintiff, | 1:18-cv-672 |
| v. |  | (TWD) |

DETECTIVE BRETT FERRIS,

Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| TREVOR W. HANNIGAN, PLLC<br>Counsel for Plaintiff<br>90 State Street<br>Suite 1400<br>Albany, New York 12207 | TREVOR W. HANNIGAN, ESQ. |
| FINKELSTEIN & PARTNERS, LLP<br>Counsel for Plaintiff<br>1279 Route 300<br>Newburgh, New York 12550 | ANDREW G. FINKELSTEIN, ESQ.<br>KENNETH B. FROMSON, ESQ.<br>RONALD ROSENKRANZ, ESQ.<br>LAWRENCE D. LISSAUER, ESQ. |
| FINE, OLIN & ANDERMAN, LLP<br>Counsel for Plaintiff<br>1279 Route 300<br>P.O. Box 1111<br>Newburgh, New York 12551 | MARSHALL P. RICHER, ESQ. |
| JOHNSON LAWS, LLC<br>Counsel for Defendant<br>646 Plank Road<br>Suite 205<br>Clifton Park, New York 12065 | GREGG T. JOHNSON, ESQ.<br>APRIL J. LAWS, ESQ.<br>COREY A. RUGGIERO, ESQ.<br>NICOLE C. HADDADNIA, ESQ. |

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**MEMORANDUM DECISION AND ORDER**</u>

On June 13, 2016, Schenectady Police Department ("SPD") Detective Brett Ferris ("Defendant") was preparing for an undercover drug buy on the street where Joshua Scism ("Mr. Scism") lived with his wife and kids.  *See generally Scism v. City of Schenectady*, No. 1:18-CV-672 (TWD), 2021 WL 4458819, at *1 (N.D.N.Y. Sept. 29, 2021), *aff'd*, 2022 WL 289314 (2d Cir. Feb. 1, 2022).  Defendant was sitting in a van with two undercover officers and a confidential informant when Mr. Scism approached the van, indicated he did not want them to sell drugs in his neighborhood, and walked away.  *See id.*  As Mr. Scism walked away, Defendant noticed a handgun tucked into Mr. Scism's rear waistband.  *See id.* at 2.  Defendant and one other undercover officer exited the van, shouted at Mr. Scism to get on the ground, and drew their firearms.  *See id.*  Defendant then fired six shots at Mr. Scism, one of which hit him in the back of his head, killing him.  *See id.*  An audiovisual recording captured the incident.  *See id.*

Mr. Scism's surviving spouse, Crystal Scism ("Plaintiff") initiated this action against Defendant and other parties on June 7, 2018.  (Dkt. No. 1.)  The parties have litigated this case for four years, and are now ready for trial on Plaintiff's sole remaining claim—a Fourth Amendment excessive force claim against Defendant, asserted under 42 U.S.C. § 1983.  (*See* Dkt. Nos. 144, 174, 176, 180; *see generally Scism v. Ferris*, No. 21-2622-CV, 2022 WL 289314, at *2 (2d Cir. Feb. 1, 2022).)  Now before the Court are the parties' thirteen (13) motions *in limine*.  (*See* Dkt. Nos. 167-73.)  In general, the motions concern three categories of evidence: (1) expert testimony, (2) documents, and (3) character evidence.  *See id.*  The Court will address the motions relating to each category of evidence, in turn.

2

I.    **LEGAL STANDARDS**

    A.    **Excessive Force**

At trial, the jury will be tasked with determining whether Defendant violated the Fourth Amendment when he shot Mr. Scism in the back of the head.  *See generally Rasanen v. Doe*, 723 F.3d 325, 334 (2d Cir. 2013).[1]  The Fourth Amendment guarantees citizens the "right . . . to be secure in their persons . . . against unreasonable . . . seizures."  U.S. Const. amend. IV.  "A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's reasonableness standard."  *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014); *see also Tennessee v. Garner*, 471 U.S. 1, 7 (1985) ("While it is not always clear just when minimal police interference becomes a seizure, there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment."). "[T]he reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see also Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 113-14 (2d Cir. 2020).  The "facts and circumstances" that drive this reasonableness inquiry include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396; *see also Chamberlain*, 960 F.3d at 113.

---

[1] Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted.  *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

It is unreasonable "for an officer to use deadly force to apprehend a suspect unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *O'Bert ex rel. Est. of O'Bert v. Vargo*, 331 F.3d 29, 36 (2d Cir. 2003); *see also Callahan v. Wilson*, 863 F.3d 144, 148-49 (2d Cir. 2017); *Rasanen*, 723 F.3d at 337; *see generally Garner*, 477 U.S. at 11-12 ("[I]f the suspect threatens the officer with a weapon . . . deadly force may be used if necessary to prevent escape, *and if, where feasible, some warning has been given*.") (emphasis added). "Where officers attempting to make an arrest used deadly force, the objective reasonableness inquiry . . . depends only upon the officer's knowledge of circumstances immediately prior to and at the moment that he made the split-second decision to employ deadly force." *O'Bert*, 331 F.3d at 36-37; *see also Graham*, 490 U.S. at 396; *Rogoz v. City of Hartford*, 796 F.3d 236, 246-47 (2d Cir. 2015).

In the case at bar, the jury must determine whether Defendant had probable cause to believe Mr. Scism posed a significant threat of death or serious physical injury to himself or others at the moment Defendant shot Mr. Scism in the back of the head. *O'Bert*, 331 F.3d at 36-37. This inquiry frames the scope of relevant evidence in determining liability.[2] *See* Fed. R. Evid. 401, 402; *see, e.g.*, *Bermudez v. City of New York*, No. 15-CV-3240 (KAM) (RLM), 2019 WL 136633, at *5, 12-13 (E.D.N.Y. Jan. 8, 2019) (reasoning "the conclusions reached by the" civilian review board, "[d]ocuments concerning the events that occurred after plaintiff's arrest," and evidence of plaintiff's prior bad acts were irrelevant in an excessive force case). The undersigned accordingly resolves the parties' motions *in limine* with this scope in mind. *See, e.g.*, *Est. of Mauricio Jaquez v. Flores*, No. 10 CIV. 2881 (KBF), 2016 WL 1084145, at *1 (S.D.N.Y. Mar. 17, 2016) (hereinafter *Est. of Mauricio Jaquez I*).

---

[2] Neither party has moved to bifurcate the trial between liability and damages.

4

## B. Motion *in Limine*

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); *see also Luce v. United States*, 469 U.S. 38, 40-41 (1984). "A court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Coleman v. Durkin*, No. 9:18-CV-390 (MAD) (CFH), 2022 WL 446200, at *1 (N.D.N.Y. Feb. 14, 2022). "Courts considering a motion *in limine* may reserve decision until trial so that the motion is placed in the appropriate factual context." *Id*. "Alternatively, the court is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling at trial as the case unfolds, particularly if the actual testimony differs from what was contained in the movant's proffer." *Coleman*, 2022 WL 446200, at *1 (citing *Luce*, 469 U.S. at 41-42).

## C. Relevance and Prejudice

Evidence must be relevant to be admissible. Fed. R. Evid. 402; *see also United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. However, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "In making a Rule 403 determination, courts should ask whether the evidence's proper value is more than matched by the possibility that it will divert the jury from the facts which should control their verdict." *Scoma v. City of*

*New York*, No. 16-CV-6693 (KAM) (SJB), 2021 WL 1784385, at *2 (E.D.N.Y. May 4, 2021). In weighing the probative value of evidence against its troublesome qualities under Rule 403, "[d]istrict courts have broad discretion." *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008); *see also Laureano v. City of New York*, No. 17-CV-181 (LAP), 2021 WL 3272002, at *2 (S.D.N.Y. July 30, 2021).

### D.      Expert Testimony

"While the proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied . . . the district court is the ultimate gatekeeper." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007); *see generally* Fed. R. Evid. 104(a); *Est. of Jaquez v. City of New York*, 104 F. Supp. 3d 414, 426 (S.D.N.Y. 2015), *aff'd*, 706 F. App'x 709 (2d Cir. 2017). "The primary locus of this [gatekeeping] obligation is Federal Rule of Evidence 702, which clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify." *Est. of Jaquez,* 104 F. Supp. 3d at 426 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). Rule 702 provides:

> "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702. "Thus, this Court's inquiry into whether an expert meets Rule 702's requirements includes a review of (1) the qualifications of the proposed expert; (2) whether each proposed opinion is based upon reliable data and reliable methodology; and (3) whether the proposed testimony would be helpful to the trier of fact." *Est. of Jaquez*, 104 F. Supp. 3d at 426;

*see also Monterey v. City of New York*, No. 17-CV-4477 (VEC), 2019 WL 5884466, at *2 (S.D.N.Y. Nov. 12, 2019).

First, "[t]he threshold question under Rule 702 is whether the witness is qualified to provide expert testimony on the subject matter at hand." *Serrano v. City of New York*, No. 15-CV-6885 (LTS) (SLC), 2022 WL 2529547, at *3 (S.D.N.Y. July 7, 2022); *see also Est. of Jaquez*, 104 F. Supp. 3d at 426-27. "To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004). "If an expert's training and experience are in a field closely related to the area to the proposed testimony, that may, in appropriate circumstances, be sufficient to meet Rule 702's qualification standards." *Est. of Jaquez*, 104 F. Supp. 3d at 427.

Second, "[i]f the expert is qualified, the district court must also ascertain whether his or her testimony is reliable." *Serrano*, 2022 WL 2529547, at *4; *see generally Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (explaining the "objective" of the court's gatekeeping requirement "is to ensure the reliability and relevancy of expert testimony."); *Laureano*, 2021 WL 3272002, at *1 (explaining the factors set forth in *Daubert* "might prove helpful in determining the reliability of a particular scientific theory or technique."). "An expert's analysis must be reliable at every step, and the court must examine the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Serrano*, 2022 WL 2529547, at *4 (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002)). In appropriate circumstances, "the court may preclude an expert from testifying as to the credibility of other witnesses or evidence." *Est. of Jaquez*, 104 F. Supp. 3d at 428 (collecting cases). Furthermore,

an opinion that is speculative or conjectural does not satisfy Rule 702 and should be excluded." *Id.*; *see also Serrano*, 2022 WL 2529547, at *4.

Finally, "[e]ven after determining that a witness is qualified as an expert to testify as to a particular matter . . . and that the opinion is based upon reliable data and methodology, Rule 702 requires the district court to make a third inquiry: whether the expert's testimony (as to a particular matter) will assist the trier of fact." *Serrano*, 2022 WL 2529547, at *4 (quoting *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005)). "The Court must assure that expert testimony is helpful to, but does not usurp the province of, the trier of fact." *Id.*; *see also United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). "[E]xpert testimony that usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it . . . by definition does not aid the jury in making a decision; rather, it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's." *Nimely*, 414 F.3d at 397; *see generally Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion."). Stated differently, "although an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts." *Bilzerian*, 926 F.2d at 1294; *see, e.g.*, *Callahan*, 863 F.3d at 153 (affirming district court's preclusion of expert testimony concerning the reasonableness of an officer's actions in an excessive force case because it "intrude[d] on the jury's exclusive role as the finder of facts."); *Gibbs v. Borona*, No. 3:16-CV-00635 (JAM), 2021 WL 1171558, at *2 (D. Conn. Mar. 29, 2021) ("[N]o matter how experienced Crawford may be as a law enforcement agent, Crawford may not testify on any ultimate legal conclusion about whether the use of force was constitutionally reasonable."). Moreover, while "testimony

8

concerning the ordinary practices in [a trade or profession] may be received to enable the jury to evaluate a defendants conduct against the standards of accepted practice . . . testimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible." *Bilzerian*, 926 F.2d at 1295; *see, e.g.*, *Passino v. Tucker*, No. 8:17-CV-1028 (DJS), 2021 WL 2766979, at *3-4 (N.D.N.Y. July 1, 2021) (permitting expert to "testify to the training and the minimum standards applicable to police officers," but not "as to whether the conduct of the police officers was objectively reasonable or unreasonable.").

## II.   DISCUSSION

### A.   The Parties' Experts

The parties intend to call three expert witnesses to testify at trial.  (*See* Dkt. Nos. 164, 177.)  Plaintiff plans to call Jon M. Shane, Ph.D., "an expert in police policy and practice" who "will provide testimony as to the liability of Defendant Brett Ferris," and Zhongxue Hua, M.D., Ph.D., "an expert in the areas of Forensic Pathology, Neuropathology & Anatomic Pathology" who will testify about his "medical legal investigation" into Joshua Scism's death.  (Dkt. No. 177 at 2; *see generally* Dkt. No. 166-7 (Dr. Shane's report), 166-6 (Dr. Shane's deposition), 166-9 (Dr. Hua's report), 166-8 (Dr. Hua's deposition).)  Defendant plans to call Michael Ranalli, a "use of force expert" to testify about Dr. Shane's report and the legality of Defendant's conduct. (Dkt. No. 164 at 2; *see generally* Dkt. No. 170-6 (Mr. Ranalli's report), 102-22 (Mr. Ranalli's deposition).)

Through opposing motions, Plaintiff and Defendant each move to preclude the testimony of the other's expert (or experts) on the grounds that: (a) the expert is not qualified, (b) the expert's opinion is not reliable, (c) the expert's testimony will not help the jury, (d) the expert's testimony is not relevant, and (e) the expert's testimony is misleading and will confuse the jury.

(*See* Dkt. Nos. 167-1, 168-1, 170-13; *see generally* Fed. R. Evid. 402, 403, 702, 703.)  For the

following reasons, the Court grants Defendant's motion to preclude Dr. Shane, (Dkt. No. 167),

grants Plaintiff's motion to preclude Mr. Ranalli, (Dkt. No. 170-13 at 30-40), and denies

Defendant's motion to preclude Dr. Hua, (Dkt. No. 168).

> 1.      *Dr. Shane and Mr. Ranalli*

The parties have failed to demonstrate that the anticipated testimony of Dr. Shane and

Mr. Ranalli is sufficiently reliable, helpful to the jury, and probative to satisfy Federal Rules of

Evidence 702 and 403.  *See Williams*, 506 F.3d at 160.  Neither expert uses a reliable

methodology for arriving at his conclusions.  *See* Fed. R. Evid. 702(c), (d).  Both experts offer

opinion testimony on the ultimate issue for the jury—whether Defendant acted reasonably when

he shot Mr. Scism in the back of the head.  *See* Fed. R. Evid. 702(a).  Furthermore, both experts

opine on the relevant legal standard.  *See Nimely*, 414 F.3d at 397.  The confusing and

misleading nature of this testimony far outweighs any probative value.  *See* Fed. R. Evid. 403.

First, the experts' methods and conclusions are unreliable.  *See* Fed. R. Evid. 702(c), (d).

Dr. Shane and Mr. Ranalli offer competing opinions on the ultimate question in this case—

whether Defendant used excessive force when he shot Mr. Scism in the back of the head.

(*Compare* Dkt. No. 166-7 at 18 ("Given the totality of the circumstances, Officers Brett Ferris

and Ryan Kent did not have probable cause to use deadly force by shooting Mr. Scism in the

back of the head."), *with* Dkt. No. 170-6 at 25 ("The response of the officers was consistent with

accepted use of force policies, practices and law in that these facts support the conclusion that

Mr. Scism demonstrated the intent, ability and opportunity to use deadly force against the

officers.").)  To arrive at these conclusions, Dr. Shane and Mr. Ranalli drew competing factual

conclusions about what happened during the incident, applying their preferred set of facts to their

chosen legal standards.  (*Compare* Dkt. No. 166-7 at 18-22, 55-69, *with* Dkt. No. 170-6 at 15-25.)

For example, Dr. Shane concluded there was "no evidence Mr. Scism displayed any hostile tendencies toward the officers" and there was "no evidence the officers or a third person were in jeopardy of losing their lives."  (Dkt. No. 166-7 at 59-60).  However, according to Mr. Ranalli, Mr. Scism pulled a handgun "from his rear waistband and brought it to his side" before "turn[ing] towards the officers with the gun."  (Dkt. No. 170-6 at 16.)  Mr. Ranalli concluded Mr. Scism did this with the intention of "intimidating" Defendant and the three other individuals in the van, an act Mr. Ranalli described as "criminal menacing."  *Id.* at 23.  Based on these divergent factual narratives, Dr. Shane and Mr. Ranalli drew vastly different conclusions about whether it was reasonable for Defendant to shoot Mr. Scism in the back of the head.  *Compare id.* at 25, *with* Dkt. No. 166-7 at 18, 55.  Although not every factual disagreement between experts renders competing opinions unreliable, the divergent factual narratives proffered by Dr. Shane and Mr. Ranalli illustrate the unreliable quality of their methods and conclusions.  *Cf. Scism*, 2022 WL 289314, at *2 (concluding the record "is filled with disputes as to material facts" and noting "Ferris's brief does at times treat disputed facts as undisputed—such as when he asserts that Scism brandished a loaded gun and ignored police commands, facts that Plaintiff's evidence disputes.").  Here, the "facts" relied on by the experts are not really facts—they are conclusions reached by each experts' credibility determinations and selective reading of the evidence.  (*See generally* Dkt. No. 166-7 at 18-20, 55-61; Dkt. No. 170-6 at 16-17, 24-25.)  Based on their interpretation of the evidence, the experts offered speculative conclusions about what happened during the incident in question—like Mr. Ranalli's conclusion that Mr. Scism "intended to be intimidating" right before Defendant shot him in the back of the head.  (Dkt. No.

170-6 at 23.)  Because the experts' opinions are based on selective reading of the evidence, credibility determinations, and speculation about key facts in the moments leading up to Mr. Scism's death, they are not "based on sufficient facts or data."  *See* Fed. R. Evid. 702(b); *see also Est. of Jaquez*, 104 F. Supp. 3d at 428.  The anticipated opinion testimony from Dr. Shane and Mr. Ranalli is accordingly unreliable.

Second, the experts' opinions will not "help the trier of fact to understand the evidence or to determine a fact in issue."  *See* Fed. R. Evid. 702.  Plaintiff and Defendant intend to introduce the opinions of Dr. Shane and Mr. Ranalli on the ultimate issue for the jury—whether Defendant acted reasonably when he shot Mr. Scism in the back of the head.  (*See* Dkt. No. 177 at 2; Dkt. No. 164 at 2; *see generally Gibbs*, 2021 WL 1171558, at *2 (noting the expert's report "is essentially a lawyer's closing argument masquerading as an expert report.").)  However, this question—whether Defendant acted reasonably when he shot Mr. Scism in the back of the head—is a mixed question of law and fact that the jury alone must decide.  *Nimely*, 414 F.3d at 397; *Bilzerian*, 926 F.2d at 1294-95; *see, e.g.*, *Callahan*, 863 F.3d at 153 ("In this case, Zogbi's suggestions that Officer Wilson did not act reasonably under the circumstances intrude on the jury's exclusive role as the finder of facts.  The district court therefore acted within its discretion in precluding Zogbi from testifying with respect to plaintiffs' excessive force claim against Officer Wilson.").  Because the crucial facts in this case are not complex or hard to understand, the trier of fact is fully capable of drawing factual conclusions about what happened in the moments leading up to Mr. Scism's death without input from Dr. Shane and Mr. Ranalli.  *See, e.g.*, *Gibbs*, 2021 WL 1171558, at *2 ("As the Second Circuit has explained, expert testimony that seeks to address lay matters which the jury is capable of understanding and deciding without the expert's help is not relevant and is therefore inadmissible."); *United States v. Krug*, No. 1:15-

CR-00157 RJA, 2019 WL 336568, at *6 (W.D.N.Y. Jan. 28, 2019) ("The jury does not need an expert opinion to understand the fact testimony here, which will consist mostly of eye-witness accounts by the alleged victims and witnesses to the incidents."); *Est. of Jaquez*, 104 F. Supp. 3d at 432 ("In short, his speculative readings of the evidence amount to little more than common sense interpretations of the evidence—a role well-suited for a jury.").  Dr. Shane and Mr. Ranalli each offer their own legal test for the constitutionality of Defendant's conduct, but this Court, not the parties' experts, is responsible for instructing the jury on the law.  *Nimely*, 414 F.3d at 397; *Bilzerian*, 926 F.2d at 1294.  In sum, the experts' opinions will not assist the trier of fact because the factual issues in this case are simple and require no specialized knowledge, the Court is fully capable of instructing the jury on the law, and the experts' anticipated testimony would improperly "usurp[] . . . the role of the jury in applying the law to the facts before it." *Nimely*, 414 F.3d at 397.

Finally, any probative value of testimony from Dr. Shane and Mr. Ranalli is far outweighed by the confusing and misleading nature of their opinions.  *See* Fed. R. Evid. 403.  As explained above, this Court is fully capable of instructing the jury on the law.  Introducing the experts' competing opinions about legal standards and police department policies would only serve to confuse and mislead the jury.  (*See generally* Dkt. No. 166-7 at 20-21, 62-69 (discussing legal standards and police department policies); Dkt. No. 170-6 at 20-23 (same)).  The experts' anticipated testimony accordingly fails the balancing test under Federal Rule of Evidence 403. *See, e.g.*, *McLeod v. Llano*, No. 17-CV-6062 (ARR) (RLM), 2021 WL 1669732, at *5 (E.D.N.Y. Apr. 28, 2021) (precluding the admission of a police department's use of force policy under Rule 403 because it announced "a less stringent standard than the objective reasonableness test applicable here.").

For these reasons, the Court grants Defendant's motion to preclude Dr. Shane, (Dkt. No. 167), and grants Plaintiff's motion to preclude Mr. Ranalli, (Dkt. No. 170-13 at 30-40).

        *2.    Dr. Hua*

Plaintiff intends to offer the testimony of Dr. Hua to help the jury understand the relevant medical evidence at trial. (*See* Dkt. No. at 177 at 2; *see generally* Dkt. No. 166-9 at 12-13 (Dr. Hua's report); Dkt. No. 166-8 (Dr. Hua's deposition).) In particular, Plaintiff seeks to introduce expert opinion testimony from Dr. Hua on Mr. Scism's body positioning at the time Defendant shot him in the back of the head. (*See* Dkt. No. 177 at 2; Dkt. No. 166-9 at 13.) In his report, Dr. Hua concluded Mr. Scism "suffered a distant gunshot wound . . . [to] the back of his head." (Dkt. No. 166-9 at 13.) According to Dr. Hua, "[t]he bullet trajectory was back to front, without appreciable upward or downward angle, and without appreciable leftward or rightward angle." *Id.* Based on his review of the evidence, Dr. Hua further opined, "[a]t the time of the shooting, Joshua was walking away from . . . and he was facing away from (not toward) the police officers." *Id.* Defendant moves to preclude Dr. Hua's testimony on the grounds that Dr. Hua is not qualified to testify about "the direction, distance, or trajectory of the bullet," and his opinion is the product of "baseless speculation." (Dkt. No. 168-1 at 1, 5.) The Court disagrees.

Dr. Hua is qualified to provide expert testimony about the cause, manner, and mechanism of Mr. Scism's death. *See* Fed. R. Evid. 702. Dr. Hua has a Ph.D. in biochemistry, medical licenses in five states, board certifications in anatomical pathology, neuropathology, and forensic pathology, and over a decade of experience determining the manner, cause, and mechanism of death as a forensic pathologist. (*See* Dkt. No. 166-9 at 2; Dkt. No. 166-8 at 3-10.) At his deposition, Dr. Hua explained that as a forensic pathologist, he is tasked with "looking for what's the cause of death, what's the manner of death . . . what's the injury mechanism." (Dkt. No. 166-

8 at 6.)  He has expertise "analyzing the injury to the human body when it's struck by a projectile, such as a bullet."  *Id.* at 8.  Here, Plaintiff intends to offer Dr. Hua's expert opinion on the manner, cause, and mechanism of Mr. Scism's death—the gunshot to the back of Mr. Scism's head.  (*See* Dkt. No. 177 at 2.)  This subject matter falls squarely within Dr. Hua's expertise and experience.  (*See* Dkt. No. 166-9 at 2; Dkt. No. 166-8 at 3-10.)  Stated differently, as a board-certified forensic pathologist with over a decade of experience diagnosing the manners, causes, and mechanisms of deaths, Dr. Hua is well qualified to provide expert testimony on the manner, cause, and mechanism of Mr. Scism's death.  *See Serrano*, 2022 WL 2529547, at *3.  Dr. Hua's training and experience are directly applicable to the subject matter of his proposed testimony.  *Tin Yat Chin*, 371 F.3d at 40.

The Court also disagrees that Dr. Hua's opinion is the product of "baseless speculation." (*See* Dkt. No. 168-1 at 5.)  It is undisputed that Mr. Scism died after Defendant shot him in the back of the head.  *See Scism*, 2021 WL 4458819, at *1-2.  Far from being "speculative," Dr. Hua's opinions concerning the trajectory and angles of the gunshot wound are consistent with the autopsy report and the undisputed fact that Mr. Scism died after Defendant shot him in the back of the head.  (Dkt. No. 166-8 at 30-32.)  In a similar vein, Dr. Hua's report is not "baseless," it is based on Mr. Scism's autopsy report, deposition testimony from the autopsy examiner, statements from the undercover officers and witnesses on the scene, a police report, and deposition testimony from the undercover officers on the scene.  (Dkt. No. 166-8 at 15, 21-27; Dkt. No. 166-9 at 12.)  Additionally, Dr. Hua's opinion about the position of Mr. Scism's body at the time Defendant shot him in the back of the head is based on his training, experience, and review of the evidence in this case.  (Dkt. No. 166-8 at 15, 21-27; Dkt. No. 166-9 at 12.)  As an experienced expert in forensic pathology, Dr. Hua is qualified to draw conclusions about the

manner, cause, and mechanism of Mr. Scism's death—including his body position at the time

Defendant shot him in the back of the head.

Defendant's motion to preclude the expert testimony of Dr. Hua is accordingly denied.

(Dkt. No. 168.)

### B.      Documents

Plaintiff intends to introduce various types of documentary evidence at trial, including

SPD policies and standing orders, four autopsy photos of Mr. Scism, and five photos of Mr.

Scism before Defendant killed him.  (*See* Dkt. No. 182; Dkt. No. 170-13 at 45-46; Dkt. No. 187-

3).  Pursuant to Federal Rules of Evidence 402 and 403, Defendant moves to preclude this

evidence and prohibit Plaintiff from wearing clothing at trial that references or depicts Mr.

Scism.  (*See* Dkt. Nos. 169, 171, 172.)  Defendant further seeks to preclude the photos of Mr.

Scism before the incident under Federal Rule of Civil Procedure 37(c)(1).  (Dkt. No. 172.)

Defendant intends to introduce documentary evidence at trial in the form of witness

statements documented by the SPD after the incident.  (Dkt. No. 165.)  Plaintiff moves to

exclude this evidence—as well as evidence of the conclusions reached by third parties that

investigated the incident—under Federal Rules of Evidence 402 and 403.  (Dkt. No. 170-13 at

12-18, 41-43.)

For the following reasons, Defendant's motion to exclude the four autopsy photos of Mr.

Scism (Dkt. No. 171) is denied, Defendant's motion to preclude the five photos of Mr. Scism

before the shooting (Dkt. No. 172) is denied in part, Defendant's motion to prohibit Plaintiff

from wearing clothing at trial that references or depicts Mr. Scism (*see id.*) is denied as moot,

Plaintiff's motion to include the five photos of Mr. Scism before the shooting (Dkt. No. 170-13

at 45-56) is granted in part, Plaintiff's motion to exclude witness statements recorded by the SPD

after the incident (Dkt. No 170-13 at 41-43) is denied, Plaintiff's motion to preclude evidence of

the conclusions reached by third parties that investigated the incident (Dkt. No. 170-13 at 12-18)

is denied as moot, and the Court reserves on Defendant's motion to preclude evidence of the

SPD policies and orders (Dkt. No. 169).

### 1. *Photos of Plaintiff and Third-Party Conclusions*

At the outset, the Court notes that two of the parties' motions *in limine* are moot.  First,

Plaintiff has conceded she has "no objection to refraining from wearing" clothes depicting or

referencing Mr. Scism.  (Dkt. No. 187-8 at 1.)  Defendant's motion to preclude her from doing

so is accordingly moot.  (*See* Dkt. No. 172.)  Second, Defendant has conceded that he does not

intend to offer evidence of the conclusions reached by the various third parties that investigated

his conduct.  (*See* Dkt. No. 185 at 4-5.)  This evidence does not appear in Defendant's pre-trial

exhibit list, (Dkt. No. 165), and according to Defendant, he "does not presently intend to make

[this evidence] a principal part of his case in chief."  (Dkt. No. 185 at 5.)  This concession moots

Plaintiff's motion to exclude evidence of third parties' findings or conclusions about

Defendant's conduct.  *See, e.g.*, *Laureano*, 2021 WL 3272002, at *8 ("Because Plaintiff has

agreed not to introduce evidence related to NYPD's internal investigation, that portion of

Defendants' motion is moot."); *McLeod*, 2021 WL 1669732, at *9 (denying as moot plaintiff's

motion *in limine* "because defendant states she does not seek to introduce such evidence at

trial.").

Defendant's motion to preclude Plaintiff from wearing clothing referencing or depicting

Mr. Scism (Dkt. No. 172) is denied as moot.  Plaintiff has conceded she will not wear such

clothing at trial.  (*See* Dkt. No. 185 at 4-5.)  Plaintiff's motion to exclude evidence of third

parties' findings or conclusions about Defendant's conduct (Dkt. No. 170-13 at 12-18) is

likewise denied as moot.  Defendant has conceded he does not intend to offer such evidence in his case in chief, but may offer it for impeachment.  (Dkt. No. 185 at 5-6; *see generally* Fed. R. Civ. P. 26(a)(3)(A) (providing each party must make pretrial disclosures "about the evidence that it may present at trial other than solely for impeachment.").)  The Court accordingly does not decide at this time whether evidence of third parties' findings or conclusions about Defendant's conduct is inadmissible under Federal Rules of Evidence 402, 403, and 802.  (*See generally* Dkt. No. 170-13 at 12-18 (moving for preclusion of this evidence under these rules).)

2. *Autopsy Photos*

Defendant moves to exclude four autopsy photos that show the fatal bullet wound on the back of Mr. Scism's head.  (Dkt. No. 171.)  According to Defendant, these photos are inadmissible under Federal Rules of Evidence 402 and 403 because they are irrelevant, unduly prejudicial, and cumulative.  (Dkt. No. 171-1 at 1-2.)  The Court disagrees.

The autopsy photos are relevant because they will help the jury understand the position of Mr. Scism's body at the moment Defendant shot him.  *See* Fed. R. Evid. 401; *see, e.g.*, *Est. of Mauricio Jaquez I*, 2016 WL 1084145, at *6 (concluding autopsy photos were relevant in an excessive force case).  The fundamental question in this case is whether Defendant had probable cause to believe Mr. Scism posed a significant threat of death or serious physical injury to himself or others at the moment he shot Mr. Scism.  *O'Bert*, 331 F.3d at 36-37.  To resolve this question, the jury will weigh evidence that is probative of Mr. Scism's body positioning when Defendant fired six shots at Mr. Scism.  (*See generally* Dkt. Nos. 164-65, 177, 182.)  The four autopsy photos are probative of this question because they show the fatal bullet wound on the back of Mr. Scism's head—indicating Defendant fired the fatal bullet when Mr. Scism was facing away from Defendant.  (*See* Dkt. No. 187-3.)  These photos are accordingly probative of

18

"the shot and wound at issue, and any damages flowing therefrom." *Est. of Mauricio Jaquez I*, 2016 WL 1084145, at *7.

Moreover, the autopsy photos are not unduly prejudicial or cumulative. *See* Fed. R. Evid. 403. Plaintiff seeks to introduce four photos (not hundreds) that show the fatal bullet wound on the back of Mr. Scism's head (not his face). (*See* Dkt. Nos. 182, 187-3.) Although these photos show a bloody bullet wound on the back of Mr. Scism's head, "the graphic or disturbing nature of [the] photograph[s] alone is not enough to render [them] inadmissible." *United States v. Salim*, 189 F. Supp. 2d 93, 98 (S.D.N.Y. 2002); *see also Est. of Mauricio Jaquez I*, 2016 WL 1084145, at *6-7. To resolve the factual questions in this case, the jury will likely weigh graphic and disturbing evidence, like the audiovisual recording of the incident and the four autopsy photos. (*See generally* Dkt. Nos. 165, 182.) The graphic and disturbing nature of this evidence does not necessarily render it prejudicial. *Accord Salim*, 189 F. Supp. 2d at 98. Here, the probative value of the four autopsy photos far outweighs any prejudicial or cumulative qualities they harbor. *See* Fed. R. Evid. 403; *see, e.g.*, *Est. of Mauricio Jaquez I*, 2016 WL 1084145, at *6-7.

For these reasons, Defendant's motion to preclude the autopsy photos is denied. (Dkt. No. 171.)

3.      *Photos of Mr. Scism Alive*

Defendant moves to preclude Plaintiff from introducing five photos of Mr. Scism before Defendant killed him. (Dkt. No. 172.) Defendant argues these photos are irrelevant, unduly prejudicial, and should be precluded under Federal Rule of Civil Procedure 37(c) because Plaintiff failed to disclose them during discovery. (*See* Dkt. No. 172-1 at 3-4.) Pursuant to this

Court's order,[3] Plaintiff moves *in limine* for the admission of these photos.  (*See* Dkt. No. 170-13 at 45-46.)  Plaintiff argues the photos are relevant for evaluating damages, they are more probative than prejudicial, and any discovery violation was harmless.  *See id.*; *see also* Dkt. No. 187-8.  The Court agrees.

First, Defendant failed to demonstrate he was prejudiced by Plaintiff's Rule 26(a)(1)(A)(ii) discovery violation.  *See* Fed. R. Civ. P. 37(c)(1); *see, e.g.*, *Passino*, 2021 WL 2766979, at *5 ("To the extent Defendants seek to preclude the photographs based on untimely disclosure or prejudice, the Court rejects that argument. The photographs at issue have been known to Defendants for some time."); *Est. of Jaquez v. Flores*, No. 10 CIV. 2881 (KBF), 2016 WL 1060841, at *12 (S.D.N.Y. Mar. 17, 2016) (hereinafter *Est. of Mauricio Jaquez II*) (concluding there was "no real prejudice identified by defendants" resulting from the late disclosure of photos).  Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that information . . . at trial, unless the failure was substantially justified *or is harmless.*"  Fed. R. Civ. P. 37(c)(1) (emphasis added); *see generally King v. Wang*, No. 14-CV-7694 (LJL), 2021 WL 5283950, at *1 (S.D.N.Y. Nov. 12, 2021).  Defendant failed to demonstrate the harm or prejudice arising from the late disclosure of five photos showing Mr. Scism living his life.  *See* Fed. R. Civ. P. 37(c)(1).  Defendant has known Plaintiff was seeking compensatory damages since 2018.  (*See* Dkt. No. 6 at 9.)  Defendant has also known these photos exist and what they

---

[3] After a settlement conference, the Court ordered the parties to meet and confer on whether they could agree to include the five photographs in discovery.  *See* Text Minute Entry dated Dec. 9, 2021.  The Court accordingly reserved decision on Plaintiff's motion to re-open discovery for admitting the five photographs of Mr. Scism.  *See id.*  Defendant maintained his objection to the five photographs.  (*See* Dkt. Nos. 138-39.)  The Court subsequently denied Plaintiff's request to re-open discovery, but noted "Plaintiff may include any request to use such photos at trial in a properly briefed motion *in limine*."  (Dkt. No. 140.)

show—that Mr. Scism lived a life, that he had a spouse and kids, and that he did various activities with his spouse and their kids.  (*See* Dkt. Nos. 138-40, 170-12.)  Taking these facts together, the Court is unpersuaded that the tardy disclosure of these photos prejudiced Defendant.

Moreover, "preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with discretion and caution."  *King*, 2021 WL 5283950, at *1.  Even if Plaintiff's untimely disclosure of the photos was not harmless, preclusion is not mandatory under Rule 37(c)(1).  *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006).  "In considering whether to exclude evidence under [Rule 37(c)(1)], courts refer to a nonexclusive list of four factors: (1) the party's explanation for its failure to disclose, (2) the importance of the evidence, (3) the prejudice suffered by the opposing party, and (4) the possibility of a continuance."  *King*, 2021 WL 5283950, at *1.  Weighing these factors, the Court concludes preclusion is not warranted because Defendant has had ample time to investigate and respond to the photos, Defendant has failed to demonstrate any prejudice suffered as a result of the untimely disclosure, and the photos are relevant to Plaintiff's damages.  *See generally Crawford v. City of Bakersfield*, No. 1:14-CV-01735-SAB, 2016 WL 5870209, at *7 (E.D. Cal. Oct. 6, 2016); *Est. of Mauricio Jaquez II*, 2016 WL 1060841, at *12.  The Court accordingly declines to exclude the four photos of Mr. Scism before his death under Rule 37(c)(1).

Second, if the jury concludes Defendant violated Mr. Scism's Fourth Amendment right, the photos will be relevant to the jury's evaluation of damages.  *See generally* Fed. R. Evid. 401; 42 U.S.C. § 1983.  Plaintiff asserts her excessive force claim under 42 U.S.C. § 1983, which "authorizes a court to grant relief when a party's constitutional rights have been violated by a state or local official or other person acting under color of state law."  *Washington v. Cnty. of*

*Rockland*, 373 F.3d 310, 315 (2d Cir. 2004); *see generally* 42 U.S.C. § 1983.  Relevant here,

Plaintiff seeks relief in the form of compensatory and punitive damages.  (*See* Dkt. No. 6 at 9.)

"[W]here the jury has found a constitutional violation and there is no genuine dispute that the

violation resulted in some injury to the plaintiff, the plaintiff is entitled to an award of

compensatory damages as a matter of law."  *Kerman v. City of New York*, 374 F.3d 93, 124 (2d

Cir. 2004); *see also id.* ("[W]here the plaintiff was indisputably deprived of his liberty, and the

conduct of the defendant responsible for the deprivation was found to be unlawful, we have held

that the plaintiff is entitled to compensatory, not merely nominal, damages."); *see, e.g.*, *Collado*

*v. City of New York*, 396 F. Supp. 3d 265, 279 (S.D.N.Y. 2019) (concluding it was reasonable for

the jury to award $2.5 million in compensatory damages for loss-of-life in an excessive force

case).  "[D]amages for the loss of enjoyment of life are recoverable in a § 1983 action."

*Collado*, 396 F. Supp. 3d at 277; *see also id.* at 278-79 (explaining "other courts have explicitly

held that loss-of-life damages are recoverable by a decedent's estate where the unconstitutional

conduct of government officials resulted in death."); *Banks ex rel. Banks v. Yokemick*, 177 F.

Supp. 2d 239, 249-52 (S.D.N.Y. 2001).  Since "the basic purpose of § 1983 damages is to

*compensate persons for injuries* that are caused by the deprivation of constitutional rights," the

photos of Mr. Scism living his life are probative of the loss of enjoyment of that life.  *See*

*Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (emphasis in original).

In sum, if there is a proffer of evidence that would support a finding that Defendant used

excessive force, the photos of Mr. Scism will be relevant to the issue of damages.  *See, e.g.*, *Est.*

*of Mauricio Jaquez II*, 2016 WL 1060841, at *12.  Plaintiff can move for the admission of the

photos at that stage, when the probative value of the five photos of Mr. Scism before Defendant

killed him would not be unduly prejudicial.  *See* Fed. R. Evid. 403.  Defendant's motion to

exclude these photos is therefore denied in part (Dkt. No. 172), and Plaintiff's motion to include the photos is granted in part (Dkt. No. 170-13 at 45-46).

        4.     *Witness Statements*

Plaintiff seeks to preclude evidence of what witnesses, including herself, said to SPD officers shortly after the incident.  (Dkt. No. 170-13 at 41-43; *see also* Dkt. No. 170-8 (statement of Confidential Informant); Dkt. No. 170-9 (statement of Plaintiff); Dkt. No. 170-10 (statement of SPD Detective Jeffrey S. Pardi.).)  Plaintiff argues this evidence is irrelevant, unduly prejudicial, and confusing because it is directly contradicted by other evidence in the record. (Dkt. No. 170-13 at 41-42.)  The Court disagrees.  Evidence of what witnesses told SPD officers shortly after the incident in question is relevant to several factual issues the jury must resolve in this case.  *See* Fed. R. Evid. 402.  The probative value of this evidence far outweighs any prejudice or confusion it harbors.  *See* Fed. R. Evid. 403.  Plaintiff's motion to preclude these witness statements under Federal Rules of Evidence 402 and 403 is accordingly denied.  (Dkt. No. 170-13 at 41-43; *see also* Dkt. Nos. 170-8, 170-9, 170-10.)

        5.     *SPD Policies and Standing Orders*

Defendant moves to preclude evidence of SPD policies and standing orders.  (Dkt. No. 169.)  He argues this evidence is inadmissible under Federal Rules of Evidence 402 and 403 because it is irrelevant and unduly prejudicial, misleading, and confusing.  (Dkt. No. 169-1 at 2-4.)  The Court declines to rule on the motion at this time.  *See Coleman*, 2022 WL 446200, at *1. This evidence may be probative of whether Defendant acted with malice, which is relevant for purposes of evaluating punitive damages.  *See Memphis Cmty. Sch. Dist.*, 477 U.S. at 306 n.9; *see, e.g.*, *McLeod*, 2021 WL 1669732, at *5 (denying "defendant's motion to categorically exclude the NYPD Patrol Guide under Rule 402" in an excessive force case) (collecting cases);

*Othman v. Benson*, No. 13-CV-4771 (NGG) (SJB), 2019 WL 1118035, at *6 (E.D.N.Y. Mar. 11, 2019) (concluding "NYPD policies may be relevant as to malice" in an excessive force case).

For example, "[i]f the evidence shows that Defendant[] did not act in accordance with [police department] polices of which [he was] informed, that would make it more probable that [he] acted in reckless disregard of the rights of [Mr. Scism]." *Othman*, 2019 WL 1118035, at *6; *accord Krug*, 2019 WL 336568, at *7 ("Here, the Court finds that testimony describing the use of force training provided to defendant is probative of defendant's experience and knowledge at the time of the incidents in question. Thus, the evidence is directly relevant to the jury's consider[ation] of whether defendant acted willfully in depriving Worthy, Rashada, and Ford of their right to be free from excessive force."). However, the Court has yet to review the SPD policies and standing orders Plaintiff seeks to permit, which may confuse the jury about the applicable legal standard. *See generally Callahan*, 863 F.3d at 151 n.9; *Rasanen*, 723 F.3d at 336-37; *McLeod*, 2021 WL 1669732, at *5. The Court accordingly reserves decision "until trial so that the motion is placed in the appropriate factual context." *Coleman*, 2022 WL 446200, at *1; *see, e.g.*, *Othman*, 2019 WL 1118035, at *6-7 (reserving judgment on a motion to exclude the NYPD Policies).

### C.   Character Evidence

Plaintiff intends to introduce a photo of where she was located when Defendant shot Mr. Scism, and testimony from Vincent Padula, an acquaintance of Mr. Scism. (*See* Dkt. No. 170-13 at 44; 177 at 2; Dkt. No. 182 at 3; *see also* Dkt. No. 170-11 (photo of Plaintiff's location at time of shooting.) For his part, Defendant seeks to introduce evidence of Mr. Scism's criminal history and prior bad acts—including photos taken of contraband found inside Mr. Scism's house after Defendant killed him. (*See* Dkt. No. 165 at 2.) The parties appear to agree that the photo of

where Plaintiff was located when Defendant shot Mr. Scism is relevant and should be admitted. (*Compare* Dkt. No. 170-13 at 44, *with* Dkt. No. 185 at 14; *see, e.g.*, *Laureano*, 2021 WL 3272002, at *6 (concluding photos of the scene of the incident "will provide relevant, and indeed critical, visual context to the jurors, who will be tasked primarily with assessing the credibility of [witness] testimony.").)  Plaintiff's motion to include that photo is accordingly denied as moot. (Dkt. No. 170-13 at 44.)

The parties disagree, however, on the testimony of Mr. Padula and evidence concerning Mr. Scism's criminal history and bad acts.  Defendant moves to exclude Mr. Padula's testimony under Federal Rule of Evidence 602 because he lacks sufficient personal knowledge about Mr. Scism's character.  (*See* Dkt. No. 173-1 at 2-3.)  Plaintiff moves to exclude evidence of Mr. Scism's criminal history and bad acts as irrelevant and unduly prejudicial.  (*See* Dkt. No. 170-13 at 19-29.)  For the following reasons, the Court denies Defendant's motion (Dkt. No. 173) and grants Plaintiff's motion without prejudice (Dkt. No. 170-13 at 19-29.).

### 1.  *Vincent Padula*

In her pre-trial submissions, Plaintiff indicated she may call Mr. Padula as a damages witness to testify about his "personal observations of Joshua Scism's enjoyment of life as a volunteer with local church activities."  (Dkt. No. 177 at 2.)  At his deposition, Mr. Padula testified that he knew Mr. Scism through church activities.  (Dkt. No. 166-10 at 5.)  Mr. Padula explained that he and Mr. Scism talked about various things, including Mr. Scism's employment, his son's health issues, and volunteer activities at the church.  *See id.* at 5-6, 8, 10-11.  Mr. Padula testified that he "couldn't believe what happened" to Mr. Scism, who "just wanted to do better for his family."  *Id.* at 12.  According to Mr. Padula, Mr. Scism would frequently sit with Sister Bernadette, a nun at their church who "mentored the family" and "would help out and do

stuff" for the family.  *Id.* at 12-13.  In return, Mr. Scism would help out at the church, doing

"anything that needed to be done."  *Id.* at 13.  Mr. Padula characterized Mr. Scism as "a young

guy with a lot of potential."  *Id.*

      This deposition testimony suggests Mr. Padula has sufficient personal knowledge of Mr.

Scism to testify about his character and "enjoyment of life as a volunteer with local church

activities."  (*See* Dkt. No. 177 at 2; *see also* Fed. R. Evid. 602.)  Defendant's motion to preclude

Mr. Padula's testimony is accordingly denied.  (Dkt. No. 173.)

      *2.    Criminal History and Bad Acts*

      Defendant intends to introduce evidence of Mr. Scism's criminal history and bad acts——

including photos taken of contraband found inside Mr. Scism's house after Defendant killed him.

(*See* Dkt. No. 165.)  Plaintiff moves to preclude such evidence on the grounds that it is irrelevant

and unduly prejudicial.  (Dkt. No. 170-13 at 19-29.)  The Court agrees.  *See* Fed. R. Evid. 402,

403.

      First, this evidence is irrelevant.  *See* Fed. R. Evid. 401; *see, e.g.*, *Passino*, 2021 WL

2766979, at *5 (concluding evidence of the victim's convictions and prior bad acts was

irrelevant in an excessive force case); *Bermudez*, 2019 WL 136633, at *12-13 (same).  The scope

of relevant evidence is limited to the fundamental question the jury must answer—whether

Defendant had probable cause to believe Mr. Scism posed a significant threat of death or serious

physical injury to himself or others at the moment Defendant shot Mr. Scism in the back of the

head.  *O'Bert*, 331 F.3d at 36-37.  This inquiry depends only on Defendant's knowledge of the

circumstances immediately prior to and at the moment he decided to shoot Mr. Scism.  *See id.*;

*see also Graham*, 490 U.S. at 396; *Rogoz*, 796 F.3d at 246-47.  Because Defendant offers no

evidence indicating that he was aware of Mr. Scism's remote criminal history and bad acts at the

moment he decided to shoot, this evidence is irrelevant to the issue of liability.[4]  *See, e.g.*, *Passino*, 2021 WL 2766979, at *5; *Bermudez*, 2019 WL 136633, at *12-13; *see generally* Fed. R. Evid. 401, 402.

Second, this evidence is unduly prejudicial and misleading.  *See* Fed. R. Evid. 403.  The prejudicial and misleading qualities of this evidence far outweigh any probative value it may have.  *See, e.g.*, *Passino*, 2021 WL 2766979, at *5 (precluding evidence of the victim's prior bad acts in an excessive force case under Rule 403); *Collado*, 2017 WL 4533772, at *6 (precluding evidence of the victim's convictions in an excessive force case under Rule 403); *Anderson v. Scanlon*, No. 3:14-CV-00829 (VAB), 2017 WL 3974994, at *3 (D. Conn. Sept. 8, 2017) ("The Court agrees with Mr. Anderson that the 2008 conviction, the items discovered in his vehicle during the November 2013 search, and the resulting criminal charges and convictions are of limited probative value in this excessive force case.").  Evidence of Mr. Scism's criminal history and bad acts is accordingly barred by Federal Rule of Evidence 403.

For these reasons, Plaintiff's motions to preclude evidence of Mr. Scism's criminal history and bad acts are granted.  (Dkt. No. 170-13 at 19-29.)  However, because this evidence may become relevant to the jury's consideration of damages, this ruling is made without prejudice.  At the appropriate time, Defendant may move for the Court to reconsider this ruling. *See generally Coleman*, 2022 WL 446200, at *1.

---

[4] Defendant's counsel conceded this point during a pretrial conference on July 21, 2022. Moreover, for obvious reasons, Mr. Scism will not be testifying in this case.  Evidence of his convictions will therefore not be admissible under Federal Rule of Evidence 609.  *See, e.g.*, *Collado v. City of New York*, No. 11 CIV. 9041 (DAB), 2017 WL 4533772, at *6 (S.D.N.Y. Sept. 27, 2017).

III.    **CONCLUSION**

For the following reasons, the Court grants Defendant's First motion (Dkt. No. 167), denies Defendant's Second, Fourth, and Sixth motions (Dkt. Nos. 168, 171, 173), denies Defendant's Fifth motion (Dkt. No. 172) in part, reserves on Defendant's Third motion (Dkt. No. 169), denies Plaintiff's Fifth motion (Dkt. No. 170-13 at 41-43), denies Plaintiff's First and Sixth motions as moot (*id.* at 12-18, 44), grants Plaintiff's Fourth motion (*id.* at 30-40), grants Plaintiff's Second and Third motions without prejudice (*id.* at 19-29) and grants Plaintiff's Seventh motion in part (*id.* at 45-46).

**ACCORDINGLY**, it is hereby

**ORDERED** that Defendant's First Motion *in Limine* to preclude the expert testimony of Dr. Shane (Dkt. No. 167) is **GRANTED**; and it is further

**ORDERED** that Defendant's Second Motion *in Limine* to preclude the expert testimony of Dr. Hua (Dkt. No. 168) is **DENIED**; and it is further

**ORDERED** that the Court reserves decision on Defendant's Third Motion *in Limine* to exclude evidence of Schenectady Police Department policies and standing orders (Dkt. No. 169); and it is further

**ORDERED** that Defendant's Fourth Motion *in Limine* to exclude four autopsy photos of Mr. Scism (Dkt. No. 171) is **DENIED**; and it is further

**ORDERED** that Defendant's Fifth Motion *in Limine* to exclude photos of Mr. Scism alive (Dkt. No. 172) is **DENIED** in part; and it is further

**ORDERED** that Defendant's Sixth Motion *in Limine* to preclude the testimony of Mr. Padula (Dkt. No. 173) is **DENIED**; and it is further

**ORDERED** that Plaintiff's First Motion *in Limine* to exclude evidence of the conclusions reached by third parties that investigated Defendant's conduct (Dkt. No. 170-13 at 12-18) is **DENIED** as **MOOT**; and it is further

**ORDERED** that Plaintiff's Second and Third Motions *in Limine* to exclude evidence of Mr. Scism's criminal history and bad acts (Dkt. No. 170-13 at 19-29) are **GRANTED** without prejudice; and it is further

**ORDERED** that Plaintiff's Fourth Motion *in Limine* to preclude the expert testimony of Mr. Ranalli (Dkt. No. 170-13 at 30-40) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Fifth Motion *in Limine* to exclude evidence of witness statements after the incident (Dkt. No. 170-13 at 41-43) is **DENIED**; and it is further

**ORDERED** that Plaintiff's Sixth Motion *in Limine* to permit a photo showing where Plaintiff was when the shooting occurred (Dkt. No. 170-13 at 44) is **DENIED** as **MOOT**; and it is further

**ORDERED** that Plaintiff's Seventh Motion *in Limine* to permit five photos of Mr. Scism before he died (Dkt. No. 170-13 at 45-46) is **GRANTED** in part.

**IT IS SO ORDERED**.

Dated: July 25, 2022
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge